**Amada P. MOLLINEDO, Appellant,**

v.

**TEXAS EMPLOYMENT COMMISSION, Appellee.**

**No. 01–83–0042–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 23, 1983.

Rehearing Denied Dec. 1, 1983.

Jeffrey J. Skarda, Houston, for appellant.

Bradley Seals, Austin, for appellee.

Before  DUGGAN,  WARREN  and DOYLE, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a judgment in a non-jury trial upholding the decision of the Texas Employment Commission ("the Commission") disqualifying appellant from certain unemployment compensation benefits and reducing her weekly benefit amount.

Appellant was employed as a clerk in a bookstore in October 1977. On October 19, 1979, she informed her employer that she was quitting the job that day, and did quit. The Commission initially determined that she was eligible for unemployment compensation, but her former employer protested the claim. After a hearing before an appeals referee, the Commission's Appeal Tribunal found that she voluntarily quit her job without good cause and disqualified her from receiving unemployment benefits for four weeks. Further, the Tribunal found that her employer had accidentally filed duplicate wage reports for one quarter. The Tribunal deleted wage credits in the amount of $1,628.37 from her account and reduced her weekly benefits amount from $105.00 to $66.00. As a result of these two findings, an overpayment of $537.00 was assessed against her. The Commission affirmed the Appeal Tribunal's ruling, and appellant sought judicial review in the county court at law pursuant to Tex.Rev. Civ.Stat.Ann. art. 5221b–4 (h & i) (Vernon 1971), which provides for a trial de novo after a decision of the Commission has become final. *Texas Employment Commission v. City of Houston,* 616 S.W.2d 255, 258 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). At the conclusion of plaintiff-appellant's case, the court granted the Commission's motion for judgment, on the grounds that appellant failed to show that the Commission's decision was not supported by substantial evidence. Appellant asserts five points of error on appeal.

■ Appellant's first point of error asserts that there is no substantial evidence to support the Commission's finding that she voluntarily quit her job as a sales clerk without good cause connected with her work. An action to review a decision of the Texas Employment Commission is governed by the substantial evidence rule. *Texas Employment Commission v. Holberg,* 440 S.W.2d 38, 42 (Tex.1969); *DeLeon v. Texas Employment Commission,* 529 S.W.2d 268, 270 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). As stated by the Texas Supreme Court in *Fort Worth v. City of Fort Worth,* 147 Tex. 505, 217 S.W.2d 664, 666 (1949):

> Although the statute [a civil service act] provides for a trial de novo, this term as applied to reviews of administrative orders has come to have a well-defined significance in the decisions of this state, and as a rule has been taken to mean a trial to determine only the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence.

*Accord Texas Real Estate Commission v. Howard,* 538 S.W.2d 429 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Substantial evidence is more than a mere scintilla or some evidence, but less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. *Browning-Ferris, Inc. v. Texas Department of Health,* 625 S.W.2d 764, 768 (Tex.App.—Austin 1981, writ ref'd n.r.e.). The trial court does not assume the role of fact finder; the issue is purely one of law. *Texas Employment Commission v. Camacho,* 394 S.W.2d 35, 36 (Tex.Civ.App.—Dallas 1965, no writ). In fact, the evidence may be substantial and yet greatly preponderate the other way. *Lewis v. Metropolitan Savings and Loan Ass'n,* 550 S.W.2d 11, 13 (Tex.1977).

■ If there is substantial evidence in the record supporting the findings, the order must stand even though the Commission may have decided differently from how the reviewing court would have decided. *Lewis v. Jacksonville Building & Loan Ass'n,* 540 S.W.2d 307, 311 (Tex.1976). To decide, as a matter of law, that substantial evidence supports the findings, the court, whether trial or appellate, must examine and take into consideration all of the evidence. *Texas Employment Commission v.*

*Riddick,* 485 S.W.2d 849, 852 (Tex.Civ.App. —Texarkana 1972, no writ) (quoting *Jones v. Marsh,* 148 Tex. 362, 224 S.W.2d 198 (1949)). We proceed, therefore, to the examination of the facts to determine whether substantial evidence supports the Commission's finding.

Appellant, the only witness heard by the trial court, testified that she obtained her job in October 1977 as bookseller and clerk because her mother was a friend of one of the owners of the shop. Her employer knew at the time she was hired that she had a medical problem, a recurrent eye disease known as uveitis that prevented her from doing close work. From May 1978 and thereafter, she started doing inventory work as part of her regular duties and, in addition, she took orders, answered the telephone, and performed maintenance work. She used a magnifying glass to inventory the cards but found the work difficult.

On cross-examination, appellant testified that she had had the eye condition for twelve years and that she told her employer at the time of hiring that she could perform the job "except where the letters were so small and I had to strain my eyes." On the day she quit, her employer asked her to prepare the Christmas cards and "make the inventory of the year before." She had done the same job the previous year, but she said that the other clerk, who worked the evening shift, had cooperated with her whereas the new clerk did not. The only evidence in the statement of facts indicating why she left her job is found in her testimony on cross-examination:

Q. When you left work on the 19th, did you tell [the employer] that you were quitting?

A. I told her.

Q. Did you tell her why you were quitting?

A. I told her that I was quitting because she was saying that I was not doing my work properly, and she expected more from me. I told her I didn't have time nor the space to do the work because there were more customers at that time.

Although the appellant was the only witness called on her behalf, the court did have before it the answer filed *pro se* by appellant's employers. Facts admitted in a pleading are considered judicial admissions or a substitute for evidence. *Johnson v. Johnson,* 579 S.W.2d 30, 31 (Tex.Civ.App.— Beaumont 1979, no writ). This answer stated that the appellant's "poor health in general caused her to have poor attendance and that when she did report to work, she was ill a great part of the time, and therefore, could not perform well."

Appellant's counsel attempted unsuccessfully to have admitted into evidence a letter from appellant's doctor and testimony concerning her social security disability benefits. The court's refusal to admit this evidence is dealt with in the fourth and fifth points of error.

The only other evidence relevant to this point of error is the Commission's stipulation that "the documents certified as the record are genuine and authentic as filed with the court by letter of July 17, 1981." The transcript does not include such a letter, but it does contain a certified copy of the entire record maintained by the Commission in connection with the appellant's claim. However, that record was not offered in evidence at trial.

While there is evidence that appellant's eye condition bothered her at work, she never stated at trial that she quit because of medical problems. On the contrary, her quoted testimony indicates she left because of a reprimand and because she had been given too much work. There is no medical evidence that her physical condition was such that she could not perform the job or that she was advised by a physician to quit. The cases summarized in the excerpts from the Commission's Appeals Policy and Precedent Manual, in which health problems were found to be good cause for quitting, almost invariably included evidence that a doctor had advised the claimant to resign.

Appellant has not shown that reasonable minds could not have reached the conclusion that she quit voluntarily without

good cause connected with her work. *Auto Convoy v. Railroad Commission of Texas,* 507 S.W.2d 718, 722 (Tex.1974). Appellant's first point of error is overruled.

■ Appellant's second point of error contends that it was error to hold her liable for the part of the overpayment of benefits to her caused by her employer's error of duplicate reporting.

The weekly benefit paid an eligible claimant under the Texas Unemployment Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 5221b–1 et seq. (Vernon 1971 & Vernon Supp.1983), is based upon the amount of wages the individual received during the first four or five quarters preceding the application for unemployment compensation, and is computed at the rate of ⅟₂₅ of wages received from employment during that quarter in which the claimant's wages were highest. Art. 5221b–1(b) (Vernon Supp.1983). Thus, the more wages earned in a claimant's best quarter, the more benefits the claimant is eligible to receive.

Here, the Commission deleted $1,628.57 in wage credits from the appellant's account because her employer accidentally reported her wages for the first quarter of 1979 twice: first, under the account of Ben and Fidencio de la Rosa; then, after the death of Ben de la Rosa, under the account of Fidencio de la Rosa. As a result of this correction of the Commission's records, the weekly benefit to which appellant was entitled was reduced by $39.00, and she was informed that she must repay the excess in benefits she had already received. Appellant argues that the Commission should not be permitted to recover from a blameless employee for benefits received because of an error caused by an employer.

The Commission's action is authorized by article 5221b–14(d) of the Act, which governs liability for an overpayment:

Any person who, by reason of . . . misrepresentation by him or by another, of a material fact (irrespective of whether such . . . misrepresentation was known or fraudulent) has received any sum as benefits under this Act while any conditions for the receipt of benefits imposed by this Act were not fulfilled in his case, or while he was disqualified from receiving benefits, *shall,* in the discretion of the Commission, *either be liable to have such sum deducted from any future benefits payable to him* under this Act or *shall be liable to repay to the Commission* for the Unemployment Compensation Fund, *a sum equal to the amount so received by him,* and such sum shall be collectible in the manner provided in Section 14(b) of this Act for the collection of past due contributions. (Emphasis added.)

Appellant cites *Martinez v. Texas Employment Commission,* 570 S.W.2d 28, 32 (Tex. Civ.App.—Corpus Christi 1978, no writ), in which the court ruled that the claimant need not reimburse the Commission for an overpayment. There, however, the mistake was caused solely by the Commission itself, with no misrepresentation or nondisclosure to the Commission.

In the instant case, the parties agree that the misrepresentation was made by the employer. Appellant's request in her brief that this court extend *Martinez,* and hold that a claimant may be forgiven an overpayment caused by the employer's error, would contradict the plain meaning of the statute, which places liability upon the recipient of benefits obtained by reason of nondisclosure or misrepresentation "by him or by another." The *Martinez* court stated clearly that Article 5221b–14(d) gives no discretion to the Commission to forgive or reduce a payment. 570 S.W.2d at 31. It merely confers the discretion to demand a current repayment or a deduction from future benefits. *Id.* There is substantial evidence to show that the requirements of Article 5221b–14(d) have been met, *Martinez, supra,* at 32. *Compare Texas Employment Commission v. Busby,* 457 S.W.2d 170 (Tex.Civ.App.—Amarillo 1970, writ ref'd n.r.e.) (approving a Commission order that claimant repay excess benefits received after reinstatement with back pay by an arbitrator). Appellant's second point of error is overruled.

By her third point of error, appellant asserts constitutional error in disqualifying

her from benefits since the Commission has promulgated no rules describing aggravating and mitigating factors to guide case-workers and hearing officers in determining the length of the penalty to be imposed. She cites *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), in which the United States Supreme Court, discussing the failure of the Bureau of Indian Affairs to publish regulations in the Federal Register, stated:

[I]n such a case the agency must, at a minimum, let the standard be generally known so as to assure that it is being applied consistently and so as to avoid both the reality and the appearance of arbitrary denial of benefits to potential beneficiaries.

415 U.S. at 231, 94 S.Ct. at 1072. There, however, the Supreme Court was not describing a constitutional mandate, as appellant suggests, but the Bureau's failure to comply with federal statutory requirements. Appellant also cites a wide range of cases and commentaries on the limits, constitutional and otherwise, of discretion allowed various governmental units. She does not state, however, what particular right guaranteed by the state or the federal constitution has been violated by the agency's decision.

The Commission admits in its brief and by written interrogatory admitted at trial that it has opted to take a case-by-case approach, using an Appeals Policy and Precedent Manual as a guide for claims examiners and appeals referees. It asserts that to adopt rules covering all the widely varying factors and myriad possible combinations of factors that affect people leaving their jobs would create hardships for both claimants and employers. Moreover, it contends the language of the statute shows clear legislative intent that such broad rules not be adopted since it permits a disqualification period of one to twenty-five weeks, "as determined by the Commission according to the circumstances in each case." Unless mandated by statute, the choice of proceeding by general rule or by *ad hoc* adjudication is one that lies primarily in the informed discretion of the agency. *State*

*Board of Insurance v. Deffebach,* 631 S.W.2d 794, 799 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

Finally, the Commission suggests that whether such rules should be promulgated is now moot since the amending statute, Art. 5221b–3(a), no longer includes a variable disqualification period, except for the situation of a claimant's voluntary resignation to move with a spouse. A claimant in appellant's circumstances would, under the new statute, be totally disqualified until she returned to work.

The question of whether appellant's constitutional rights were violated is not rendered moot by the later amending of the statute under which she was penalized. A case becomes moot only when one seeks to obtain relief upon an alleged controversy, when in reality none exists, or upon some matter which, when granted, cannot have any practical legal effect upon a then existing controversy. *Pope v. City of Dallas,* 636 S.W.2d 244 (Tex.App.—El Paso 1982, no writ). The amendment of a statute would not render moot the constitutionality of an earlier action based upon the statute. Appellant has not shown, however, that the lack of written standards for determining her disqualification period resulted in a decision that was in any way arbitrary, unreasonable, capricious, or made without regard to the facts. Appellant's third point of error is overruled.

In her points of error four and five, appellant contests the exclusion at trial of a letter written by her doctor and her own testimony regarding her receipt of social security disability benefits after the Commission's ruling.

Appellant argues the relevance of the letter to show her impairment at the time of her resignation and her continuing availability for work other than work requiring small details within close range. She claims to have been denied admission of the letter in spite of properly authenticating it under Tex.Rev.Civ.Stat.Ann. arts. 3737e, 3731b and 3731c (Vernon Supp.1983), statutes au-

thorizing the admission of business records and copies thereof.

The court sustained the Commission's objection that the contents of the letter were not admissible until the letter itself was admitted. It appears that the Commission made no objection to the admission of the actual letter, and appellant's offer of the document was never ruled upon.

■ Assuming the letter was wrongfully excluded, the error was harmless. A judgment should not be reversed on appeal for excluding evidence unless the trial court committed error that was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the cause. Tex.R.Civ.Proc. 434; *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 935 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ The letter, authenticated by affidavit (in accordance with the rules of evidence) and made a part of the transcript, is dated December 12, 1979, and was written by appellant's ophthalmologist *more than seven weeks after she left her job.* It reads as follows:

To Whom It May Concern:

Mrs. Amada Mollinedo has been under my care since August 1972 because of Recurrent Bilateral Uveitis. The most recent exacerbation of her condition started the last October. The disease itself and continued application of mydriatics make her unable to perform any work requiring good vision. She is in particular unable to perform any work where she is required to see clearly small details within close range, reading included. The treatment has to continue over additional several weeks.

Sincerely yours,

K. Edmund Spak, M.D.

As the Commission points out, the exclusion of testimony of a witness is not harmful where the court had previously admitted similar evidence through testimony of another witness. *Crisp v. Parker,* 516 S.W.2d 10 (Tex.Civ.App.—Austin 1974, no writ). The letter restates what the appellant had

said—that her eye condition caused problems for her on the job. It does not say why she quit or that she had been advised by her doctor to quit. Appellant's fourth point of error is overruled.

Appellant urges that the exclusion of her testimony about her subsequent receipt of social security disability benefits was error because she had pleaded her eye condition as a specific defense to disqualification for having voluntarily quit. She claims the excluded testimony was highly relevant to show the seriousness of her ailment.

■ The seriousness of appellant's condition was relevant only insofar as it related to why she quit her job. The question before the trial court was whether the evidence it heard showed facts in existence *as of the time the order was entered* which reasonably support the order. *Kavanagh v. Holcombe,* 312 S.W.2d 399, 403 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.). Appellant's counsel offered to prove that appellant was receiving benefits from social security at the time of trial. Error in the exclusion, if any, is not shown by an offer of proof showing the relationship between appellant's receipt of present benefits from another agency and good cause for quitting a job in 1979. As a general rule, error is not shown in excluding evidence unless the record shows clearly not only what the evidence would have been if admitted, but also its relevancy. *Gonzalez v. Texas Dept. of Human Resources,* 581 S.W.2d 522, 532 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Appellant's fifth point of error is overruled.

The judgment is affirmed. Costs incurred in all judicial proceedings relating to this claim are taxed against the Commission, pursuant to Tex.Rev.Civ.Stat.Ann. art. 5221b–13(b) (Vernon 1971).